COURT OF APPEALS OF VIRGINIA

Present:    Judges Friedman, Chaney and Raphael
Argued by videoconference

MARCUS ANTONIO HUNTER

v.        Record No. 1614-23-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE FRANK K. FRIEDMAN
MAY 13, 2025

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
James A. Willett, Judge

Elena Kagan, Assistant Public Defender (Kelsey Bulger, Deputy
Appellate Counsel; Virginia Indigent Defense Commission, on
briefs), for appellant.

S. Hallie Hovey-Murray, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a show cause hearing relating to the felony charge of possessing a Schedule I

or II controlled substance, the trial court found Marcus Antonio Hunter guilty of violating the

conditions of his supervised probation. The court reimposed two years of the previously

suspended sentence and terminated Hunter's probation.  Afterwards, Hunter filed a motion to set

aside and dismiss the verdict, alleging the trial court lacked "subject matter jurisdiction" to

conduct the sentencing revocation hearing and to convict and sentence him for the alleged

probation violation.  At the subsequent hearing on this motion, Hunter asked the trial court to

vacate his probation violation conviction "due to the [c]ourt's lack of jurisdiction under

[Code § 19.2-306(B)]."  The trial court denied the motion.  Later, by order entered on October

10, 2023, the trial court convicted and sentenced Hunter for the probation violation.  On appeal,

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

Hunter alleges that the trial court erred in denying his motion because it lacked the authority to revoke his sentence. He also alleges that the trial court abused its discretion in imposing two years of active incarceration upon him. We affirm.

BACKGROUND[1]

On April 9, 2021, following Hunter's earlier guilty plea to the felony charge of possessing a Schedule I or II controlled substance, the trial court sentenced Hunter to five years of incarceration with four years and nine months suspended on the condition that he be of good behavior for two years. In imposing this sentence, the court ordered that Hunter be placed on supervised probation for two years upon his release from confinement. Hunter began his supervised probation on June 8, 2021.

On March 1, 2022, the police arrested Hunter on one felony charge of possessing a firearm after being convicted of a nonviolent felony more than ten years earlier, one misdemeanor charge of carrying about his person a concealed weapon, one misdemeanor charge of brandishing a firearm, one felony charge of robbery by force, and one misdemeanor charge of assault and battery. As a result, Hunter's local probation officer, Caitlin D. Marsh, filed with the trial court a letter and major violation report. In the report, Marsh informed the trial court of Hunter's new criminal charges and alleged that the three firearm offenses violated Conditions 6 and 9 of his supervised probation.[2] Condition 6 read, "I will follow the Probation and Parole Officer's instructions and will be truthful, cooperative, and report as instructed." Condition 9

---

[1] "On appeal, [w]e view the evidence received at [a] revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it." *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (alterations in original) (citations and internal quotation marks omitted). Applying this familiar principle of appellate review, we will state the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

[2] Hunter personally reviewed and signed his conditions on October 29, 2021.

read, "I will not use, own, possess, transport or carry a firearm." That condition was due to Hunter's membership in a criminal street gang. Given these violations, Marsh recommended that the trial court issue a capias for a show cause and hold Hunter without bond "due to the violent nature of the pending charges."

On April 21, 2022, the trial court held a sentence revocation hearing based on Marsh's March 8, 2022 report. At this hearing, however, the Commonwealth moved to dismiss the show cause because the report did not allege a Condition 1 violation "even though there [was] an allegation of new criminal charges." The prosecutor then said to the trial court, "I'm going to contact probation myself and have them refile a Major Violation Report alleging a Condition [1] violation based on the new law of offenses." With no objection by Hunter, the trial court granted the motion and dismissed the show cause by an order entered on May 5, 2022.

On April 3, 2023, Hunter entered guilty pleas to the felony charges of possessing a firearm after being convicted of a nonviolent felony more than ten years earlier and stealing property of another. As a result, Daniel R. Hill of the local probation and parole office drafted a letter and a new major violation report informing the trial court of the convictions and the pending status of the remaining charges. In this report, Hill alleged that Hunter's two new felony convictions violated Condition 1 of his supervised probation, which read, "I will obey all Federal, State and local laws and ordinances." Accordingly, Hill recommended that the trial court issue another show cause. The court issued a rule to show cause on June 8, 2023.

Hunter appeared before the trial court on the capias return relating to the rule to show cause. The trial court appointed defense counsel, and set the sentence revocation hearing for August 17, 2023. A day before the sentencing hearing, Hunter filed a sentencing memorandum that included two certificates showing that he had completed courses in anger management and victim impact. In this memorandum, Hunter argued that he already was being sufficiently

punished for his criminal conduct due to a two-year active prison sentence imposed for one of his new criminal offenses and a Department of Corrections policy that gave less good-time credit for pretrial detention in a non-DOC facility. Citing his successful completion of the programs on anger management and victim impact, Hunter argued that he was an excellent candidate for rehabilitation. Finally, Hunter emphasized his family's strong support, his desire to reconnect with his children, and to provide his children with financial and emotional support. For these reasons, Hunter asked the trial court to "find that he [was] a good candidate for rehabilitation, reduce the low end of his guidelines, and impose no additional active period of incarceration."

At the sentencing revocation hearing, Hunter conceded that he had violated the conditions of his supervised probation and the trial court found him guilty of committing a probation violation. Thereafter, in arguing for leniency, Hunter admitted evidence of his completion of rehabilitative programs during his period of incarceration. He also again asked the court to find that he was a good candidate for probation so that he could continue to pursue opportunities for rehabilitation. Finally, in requesting no additional active incarceration, Hunter argued that he had been a "decent probationer" before he incurred the new convictions.

Before pronouncing its sentence for the probation violation, the trial court noted that it had given Hunter "a pretty minimal sentence" for the underlying offense of possessing a Schedule I or II controlled substance. When the trial court asked Hunter why he possessed a gun while on probation, Hunter said that he "was just trying to help a friend in that situation." The trial court sentenced Hunter to two years of active incarceration and terminated his probation.

Two weeks later, Hunter filed a motion to set aside and dismiss his conviction and sentence. Hunter argued that the trial court lacked "subject matter jurisdiction" to conduct the sentencing revocation hearing and to convict and sentence him for the probation violation. Although the trial court had not yet entered a final sentencing revocation order, Hunter argued

- 4 -

that the trial court's "order of August 17, 2023" was "void ab initio" because it did not have "subject matter jurisdiction" to enter it. Relying on Code § 19.2-306(B), Hunter argued that the trial court lacked "subject matter jurisdiction" because it had received notice of his alleged probation violation on March 8, 2022, but it did not issue process for the sentence revocation until June 8, 2023, which was "well past the 90[-]day limitation."

On September 15, 2023, the trial court held a hearing on Hunter's motion. Hunter asked the court to vacate his probation violation conviction "due to the [c]ourt's lack of jurisdiction under [Code § 19.2-306(B)]." He argued that the "statute of limitations built into the [p]robation [s]tatute" meant that there was a "jurisdictional issue." He argued that the statute "takes away the [c]ourt's jurisdiction" after 90 days and the trial court had received notice of his new probation violations "long before 90 days of the process being issued." Although Hunter did not dispute that the sentence revocation hearing involved alleged violations of a different probation condition, he argued that the violations involved the same criminal behavior referenced in the first major violation report. The court denied Hunter's motion. By order entered on October 10, 2023, the trial court convicted and sentenced Hunter for the probation violation. This appeal followed.

ANALYSIS

Hunter appeals his probation violation conviction and sentence on two grounds. First, he alleges the trial court erred in denying his motion to set aside and dismiss because "the court lacked the authority to revoke his sentence." Second, he alleges the trial court "abused its discretion in sentencing him to two years of active incarceration for his probation violation."

I. Code § 19.2-306 Governs the Procedures for Trial Courts to Exercise Their Authority and is an Active Jurisdiction Requirement; Under *Cilwa v. Commonwealth*, 298 Va. 259 (2019), Hunter was Required to Object Contemporaneously to any Alleged Noncompliance with Notice Requirements and he Failed to do so

A. Standard of Review

Hunter argues that the trial court lacked the authority to impose his previously suspended two-year sentence because it failed to issue process or to compel his court appearance for his alleged probation violations involving his three firearm-related criminal offenses within 90 days of receiving notice of these violations, as required by Code § 19.2-306(B).

On appeal, we review questions of statutory interpretation de novo. *Jones v. Commonwealth*, 64 Va. App. 361, 366 (2015). "When the language of a statute is unambiguous, courts are bound by the plain meaning of that language and may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated." *Atkins v. Commonwealth*, 54 Va. App. 340, 344 (2009) (quoting *Williams v. Commonwealth*, 265 Va. 268, 271 (2003)). Statutory interpretation is not conducted in isolation, instead, "[s]tatutes which have the same general or common purpose or are parts of the same general plan are also ordinarily considered as *in pari materia*." *Finnerty v. Thornton Hall, Inc.*, 42 Va. App. 628, 635-36 (2004) (quoting *Lucy v. County of Albemarle*, 258 Va. 118, 129 (1999)). We "consider the entire body of legislation and the statutory scheme to determine the true intention of each part." *Id.* at 636 (internal quotations marks omitted) (quoting *McCray v. Commonwealth*, 37 Va. App. 202, 204 (2001)).

"[A] trial court's jurisdiction is a question of law that is reviewed *de novo* on appeal." *Brown v. Brown*, 69 Va. App. 462, 468 (2018) (alteration in original) (quoting *Reaves v. Tucker*, 67 Va. App. 719, 727 (2017)). Thus, "[a] challenge to subject matter jurisdiction presents a question of law that we review de novo. *Gray v. Binder*, 294 Va. 268, 275 (2017). "The subject matter jurisdiction of circuit courts is 'entirely prescribed by statute.'" *Riddick v. Commonwealth*, 72 Va. App. 132, 143 (2020) (quoting *Kelley v. Stamos*, 285 Va. 68, 75 (2013)). Similarly, "[w]hether

- 6 -

a claim is barred by the statute of limitations is a question of law." *Taylor v. Commonwealth*, 64

Va. App. 282, 285 (2015) (quoting *Tuck v. Goodyear Tire & Rubber Co.*, 47 Va. App. 276, 284

(2005)). Hence, "the applicability of the statute of limitations is a purely legal question of statutory

construction which we review de novo." *Conger v. Barrett*, 280 Va. 627, 630 (2010).

B. Hunter's Claims are not Properly Grounded in Subject Matter Jurisdiction

Hunter argues that the trial court lacked subject matter jurisdiction to review his sentence

revocation based on the 90-day notice requirement in Code § 19.2-306(B). Code § 19.2-306(B)

states:

> The court may not conduct a hearing to revoke the suspension of
> sentence unless the court issues process to notify the accused or to
> compel his appearance before the court within 90 days of receiving
> notice of the alleged violation or within one year after the expiration
> of the period of probation or the period of suspension, whichever is
> sooner, or, in the case of a failure to pay restitution, within three
> years after such expiration. If neither a probation period nor a period
> of suspension was fixed by the court, then the court shall issue
> process within six months after the expiration of the maximum
> period for which the defendant might originally have been sentenced
> to be incarcerated. Such notice and service of process may be
> waived by the defendant, in which case the court may proceed to
> determine whether the defendant has violated the conditions of
> suspension.

"Jurisdiction is a term which can engender much confusion because it encompasses a variety of

separate and distinct legal concepts." *Hunter v. Commonwealth*, 56 Va. App. 582, 589 n.7 (2010)

(citations and internal quotation marks omitted). "Subject matter jurisdiction 'refers to a court's

power to adjudicate a class of cases or controversies.'" *Riddick*, 72 Va. App. at 141 (quoting *Cilwa*,

298 Va. at 266). It also is known as "potential jurisdiction," *Mohamed v. Commonwealth*, 56

Va. App. 95, 100 (2010), and it "can only be acquired by virtue of the Constitution or of some

statute," *Pure Presbyterian Church of Wash. v. Grace of God Presbyterian Church*, 296 Va. 42, 49

(2018) (quoting *Humphreys v. Commonwealth*, 186 Va. 765, 772-73 (1947)). "Neither the consent

of the parties, nor waiver, nor acquiescence can confer it." *Id.* "The lack of subject matter

jurisdiction can be initially raised at any point during the proceedings, including on appeal." *Id.* at 50.

In contrast, "'active jurisdiction'—pragmatically called the 'jurisdiction to err'—involves not the power of the court but the proper exercise of its authority consistent with 'settled principles of the unwritten law' or any applicable 'mandate of the statute law.'" *Cilwa*, 298 Va. at 266 (quoting *Farant Inv. Corp. v. Francis*, 138 Va. 417, 427 (1924)). It has also been called "authority jurisdiction." *Mohamed*, 56 Va. App. at 101 ("While the authority to exercise jurisdiction is a type of jurisdiction, it is distinct from subject matter jurisdiction[.]").

> Simply stated, active jurisdiction requires a court with subject matter jurisdiction to adjudicate a case consistent with the law governing that adjudication. As our recent cases have emphasized, "[t]his distinction guards against the improper elevation of a court's failure to 'comply with the requirements for exercising its authority to the same level of gravity as a lack of subject matter jurisdiction.'"

*Cilwa*, 298 Va. at 266-67 (quoting *Jones v. Commonwealth*, 293 Va. 29, 47 (2017)).

In *Cilwa*, the Supreme Court of Virginia held that Code § 19.2-306 is an active jurisdiction requirement:

> Code §§ 19.2-304 and 19.2-306 govern the procedures for the trial court's *exercise* of authority over suspended sentences, probation, and revocation proceedings. Neither statute *grants* a trial court categorical judicial power over criminal cases or their attendant proceedings, and thus, neither can reasonably be read to strip a trial court of subject matter jurisdiction if the court violates those procedures. Unless a procedural statute clearly states otherwise, "[t]he validity of a judgment based upon a challenge to the application of [such] a statute raises a question of trial error, and not a question of [subject matter] jurisdiction[.]"

*Id.* at 269-70 (first, second, and third alterations in original) (quoting *Pure Presbyterian Church of Wash.*, 296 Va. at 56). Furthermore, defects in active jurisdiction can be waived and are not subject to collateral attack. *Riddick*, 72 Va. App. at 143. "Accordingly, a claim that a court lacks active

- 8 -

jurisdiction cannot be raised for the first time on appeal and is subject to the contemporaneous objection rule." *Id.*

### C. Hunter's "90 Day" Claim is Subject to the Contemporaneous Objection Rule, and Hunter did not Timely Raise this Issue

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "One of the tenets of Virginia's jurisprudence is that trial counsel must timely object with sufficient specificity to an alleged error at trial to preserve that error for appellate review." *Perry v. Commonwealth*, 58 Va. App. 655, 666 (2011). "The purpose of this contemporaneous objection requirement is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015).

In addition, we "will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue." *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc) (citing *Floyd v. Commonwealth*, 219 Va. 575, 584 (1978)). "[T]he argument asserted on appeal [must] be the same as the contemporaneous argument at trial." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "[N]either an appellant nor an appellate court should 'put a different twist on a question that is at odds with the question presented to the trial court.'" *Id.* at 744 (quoting *Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999)). "Not just any objection will do." *Jones v. Commonwealth*, 71 Va. App. 597, 606 (2020) (quoting *Bethea*, 297 Va. at 743). Instead, a trial court must be alerted to the precise issue to which a party objects. *See Kelly v. Commonwealth*, 42 Va. App. 347, 354 (2004). Thus, if a party fails to timely and specifically object, he waives his argument on appeal. *Arrington v. Commonwealth*, 53 Va. App. 635, 641-42 (2009).

In this case, based on our review of the record, we conclude that Hunter failed to preserve his first assignment of error under Rule 5A:18 and *Cilwa*. First, we find that Hunter's arguments to the trial court and to this Court are not the same. In his written motion to set aside and dismiss, Hunter argued that the trial court did not have "subject matter jurisdiction" to conduct a sentence revocation hearing. At the hearing on the motion to set aside and dismiss (which came after the initial revocation ruling), Hunter referred to Code § 19.2-306(B) as a statute of limitations, but he still argued that the trial court did not have "jurisdiction" to pursue a revocation of his suspended sentence.

Now, on appeal, Hunter distances himself from the concept of "jurisdiction," and argues that the trial court "lacked the authority" to conduct a sentence revocation hearing because it was beyond the 90-day "time limitation" set forth in Code § 19.2-306(B). In essence, Hunter now presents to this Court a "timing" or statute of limitations issue—not a subject matter jurisdiction issue. *See United States v. Matzkin*, 14 F.3d 1014, 1017 (4th Cir. 1994) (holding that the statute of limitations in a criminal prosecution "is not jurisdictional" but, rather, "is an affirmative defense that may be waived"); *Brooks v. Peyton*, 210 Va. 318, 322 (1969) (holding that "the right to a discharge under a statute, which provides that if a person is not tried within the specified time he shall be discharged, is not absolute in the sense that a mere lapse of time ousts the court of jurisdiction"). Even in re-framing the issue from a subject matter "jurisdiction" objection to a "time limitation" problem on appeal, Hunter presents an issue that he did not timely preserve below under Rule 5A:18.

Even if we were to merge Hunter's "subject matter jurisdiction" and time limitations arguments (and view them as variations of the same objection) based on an alleged violation of the 90-day time limitation of Code § 19.2-306(B), we find that Hunter waived this objection by failing to raise it before or at the actual revocation hearing. In this case, Hunter filed no pre-

hearing motion to dismiss the rule to show cause for the alleged probation violations resulting from his charged criminal offenses on March 1, 2022. He also did not object at the sentence revocation proceeding based on the timing defect. In fact, at the sentencing revocation hearing on August 17, 2023, Hunter conceded that he was guilty of the alleged probation violations and merely argued for leniency in sentencing.

Hunter's first objection to the show cause proceeding came on September 1, 2023, roughly two weeks after the revocation ruling—when he filed his motion to set aside and dismiss. Thus, Hunter failed to lodge a contemporaneous objection with respect to either the timing or jurisdiction claims by failing to assert them until after the trial court had already ruled against him on the Condition 1 probation violation. *See Morrison v. Bestler*, 239 Va. 166, 170 (1990) (failure to raise timing objection is waived if not raised contemporaneously); *Bass v. Commonwealth*, 70 Va. App. 522, 534 (2019) (defendant cannot raise speedy trial issue after he has been convicted); *Riddick*, 72 Va. App. at 143 (applying contemporaneous objection requirement); *see also* Rule 3A:9. Here, Rule 5A:18 bars review of Hunter's first assignment of error. Thus, as to this assignment, we affirm.

    II. The Trial Court Did Not Abuse its Discretion in Imposing Two Years of Active Incarceration for Hunter's Probation Violation

With respect to his second assignment of error, Hunter asks us to reverse and dismiss the revocation order. He argues that the trial court abused its discretion in sentencing him for his probation violations by making a "clear error of judgment" in weighing the evidence of his efforts at rehabilitation. Hunter contends that the trial court did not reward him for the "good conduct" he demonstrated before and after his arrest on the firearm charges. He also asserts that, at the sentencing hearing, "the trial court did not mention [his] mitigation evidence" and, instead, "focused exclusively on the fact that [he] allegedly had a gun while on probation" and its "feeling" that his

initial sentence on the felony drug possession conviction was "pretty minimal." We find Hunter's argument without merit.

It is very well-established that after suspending a sentence, a trial court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). "The 'revocation of a suspended sentence lies in the discretion of the trial court and that . . . discretion is quite broad.'" *Clarke v. Commonwealth*, 60 Va. App. 190, 195 (2012) (alteration in original) (quoting *Peyton v. Commonwealth*, 268 Va. 503, 508 (2004)).

"On appeal from a revocation proceeding, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Id.* (quoting *Keselica v. Commonwealth*, 34 Va. App. 31, 35 (2000)). As our Supreme Court has recognized, there are three ways a court abuses its discretion:

> [W]hen a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "In evaluating whether a trial court abused its discretion, . . . 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009) (quoting *Beck v. Commonwealth*, 253 Va. 373, 385 (1997)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it

would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor*, 285 Va. at 212). But "by definition, a trial court 'abuses its discretion when it makes an error of law.'" *Khine v. Commonwealth*, 75 Va. App. 435, 444 (2022) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)).

Here, nothing in the record supports Hunter's claim that the trial court failed to consider and weigh his mitigating evidence. Neither the trial court's lack of commentary about the mitigating evidence nor its lack of explanation for its sentencing decision is proof that it did not consider all of the evidence before it. The record supports the trial court's sentencing decision. Hunter was a known member of a street gang, and, for this reason, his probation officer specifically instructed him not to possess any firearm or ammunition. Yet, on March 1, 2022, Hunter was arrested for one felony firearm offense and two misdemeanor firearm offenses. On the same date, Hunter was arrested on robbery and assault and battery charges. Given the timing and nature of these criminal offenses, we cannot say that reasonable jurists could not differ as to what sentence would be appropriate.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*

- 13 -